## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

DONALD HENSLEY                                              CIVIL ACTION

VERSUS                                                      NO. 07-1423

N. BURL CAIN, Warden                                       SECTION "C"

## ORDER & REASONS

Before the Court is a petition for habeas corpus by Donald Hensley ("Petitioner"), filed pursuant to 28 U.S.C. § 2254.  Petitioner is seeking relief from his February 4, 2003 conviction for armed robbery under La.Rev.Stat. § 14:64, for which, after a multiple bill hearing, he was sentenced to life imprisonment at hard labor, without the benefit of parole, probation, or suspension of sentence pursuant to La.Rev.Stat. § 15:529.1.  As grounds for relief, Petitioner claims (1) that the trial court erred in denying his challenge for cause against a juror; (2) that there was insufficient evidence to support the conviction; (3) that the sentence was excessive; (4) that the trial court erred in denying him the opportunity to examine a witness, thereby denying his right to compulsory process; and (5) ineffective counsel due to his trial attorney's failure to object to the State not proving that the ten year "cleansing period " had not expired during the multiple offender hearing.  For the reasons set forth below, this petition is GRANTED IN PART as to Petitioner's claim of ineffective assistance of counsel at his multiple

offender hearing, and DENIED WITH PREJUDICE as to all other claims.

## I.        BACKGROUND & PROCEDURAL HISTORY

Petitioner is a prisoner of the State confined to the Louisiana State Penitentiary in Angola, Louisiana.[1]  He filed this federal application for writ of habeas corpus dated February 19, 2007.[2]   Petitioner was found guilty of one count of armed burglary in the Twenty Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana on February 4, 2003.[3]  The assistant district attorney filed a multiple offender bill on February 18, 2003.[4]  The court found the assistant district attorney proved the allegations contained in the multiple offender bill and sentenced the Petitioner to life imprisonment at hard labor on August 22, 2003 for conviction of his fourth offense.[5]

The following facts are taken from the Statement of Facts of the Louisiana Court of Appeal, Fifth Circuit:[6]

> On April 26, 2002, Hoang Dihn was working at Kim's Grocery, a family-owned grocery store on Garden Road, when he was held at gunpoint and the store was robbed. At about 9:00 p.m., Hoang was behind the counter working the cash register and his brother, Nhan Dihn, was in the back cleaning the kitchen as they were about to close. At that time, a man approached the cash register to purchase a bottle of Mad Dog 20/20. Hoang checked him out, bagged his bottle and proceeded to give him change for his $20 bill. While returning the change, he froze when he saw a gun pointed at his head and heard a demand for the money in

---

[1] Fed. Rec. Petition at 1.

[2] *Id.* at 6.

[3] State Rec. Vol. 1 at 47.

[4] *Id.* at 54-55.

[5] State Rec. Vol. 2 at 285.

[6] *State v. Hensley*, 04-KA-617 (La.App. 5 Cir. 3/1/05) 900 So.2d 1, 5-6.

the cash register. In Vietnamese, a scared Hoang told his brother that they were being robbed. As Nhan approached, the gunman ordered him to stay back while pointing the gun at him. Hoang gave the gunman all the money from the register.

After receiving the money from Hoang, the robber ran out of the store and Nhan chased after him, while Hoang stayed in the store. Nhan brought with him a small loaded handgun from behind the register. At this time their uncle and owner of the store, Steven Dihn, was outside cleaning up and helped chase the robber as well. Hoang pressed the panic button underneath the counter when the gun was pointed at him, and later called 911 just in case the alarm was not triggered.

Nhan chased the robber for one-half to three-quarters of a mile and admitted to firing two shots in the air while chasing him. After Nhan fired the gun into the air, the robber threw his bike down and ran. Ultimately, Nhan caught him hiding under a bush, and the robber handed over the money while asking that he not be hurt or killed. Nhan made the decision to chase the robber after witnessing the robber unarm himself, throwing the gun used in the robbery under a car. Nhan testified that, when he found Hensley, a bottle of Mad Dog 20/20 was in his possession. He and his uncle dragged the robber back to the store to wait for the police. Nhan recovered the gun from under the car.

Shortly after bringing Hensley back to the store, the police arrived. Deputy Dennis Couvillion responded to the call and, upon arrival, was advised that Hensley robbed the store and was chased down and caught by the storeowners. He was presented with the gun and money and then placed Hensley under arrest. Douglas Graffeo also responded to the call and, upon arrival, recovered evidence. He took the gun into evidence and, after pictures were taken of the money and the Mad Dog 20/20, he returned it to the storeowners and transported Hensley to lockup. He testified that he was not made aware that Nhan had fired the gun and did not have any knowledge about the bicycle. After being presented with his report, State's Exhibit 8, he read that they were not able to recover fingerprints at the crime scene.

Hensley testified that, after playing cards and drinking with co-workers that night, he returned home between 8:15 and 8:30 p.m. to discover that his live-in girlfriend had not cooked. She wanted something to eat but refused to give him the car keys because he had been drinking. Using his stepdaughter's bicycle, he went to the store and purchased a ham and cheese sandwich and a wine cooler. He left the store and smoked outside with some guys. While riding home on his bicycle, defendant states that he heard gunshots, and when he looked back he saw someone in the middle of the street shooting at him. He immediately fell off his bike, began running, and hid in the first place available. When he was caught, he asked that he not be shot, because he had done nothing wrong. He was brought

back to the store. Without telling the police about the bike or the sandwich and wine cooler, Hensley was placed in the police car. He testified that he did not take any money and did not have a gun or Mad Dog in his possession.

While testifying, Hensley admitted to three prior convictions involving simple robbery and aggravated burglary.

As previously noted, Petitioner was convicted of armed robbery on February 4, 2003 and sentenced on February 18, 2003 to sixty years at hard labor without the benefit of parol, probation, or suspension of sentence pursuant to La.Rev.Stat. § 14:64(B).[7]  Petitioner was then sentenced to life imprisonment at hard labor after his multiple bill hearing on August 22, 2003.[8] He appealed to the Louisiana Court of Appeal, Fifth Circuit, claiming three assignments of error: 1) that the trial court erred in failing to excuse jurors for cause; 2) that the trial court erred in denying his motion for a new trial because the evidence presented was not sufficient to support his conviction; and 3) that the sentence was excessive because the trial court failed to consider mitigating factors and a *Dorthey* downward departure.[9]  The Louisiana Fifth Circuit affirmed his conviction, but noted a potential issue regarding the sufficiency of the evidence introduced at the habitual offender hearing.[10]  The court declined to review the matter because Petitioner did not contest the habitual offender finding in his appeal.[11]  The Louisiana Supreme Court denied his writ of certiorari and/or review on June 17, 2005.[12]

---

[7] *Hensley*, 900 So.2d at 4.

[8] *Id.* at 5.

[9] Fed. Rec. Petition at 47, Exhibit A, *State v. Henlsey*, 04-KA-617, November 3, 2004.

[10] *Hensley*, 900 So.2d at 13-14.

[11] *Id.*

[12] *State v. Hensley,* 904 So.2d 683 (La. 2005); State Rec. Vol. 5.

Petitioner filed an application for post-conviction relief in the state trial court on October 19, 2005, raising two issues: 1) whether the trial judge violated Petitioner's Sixth Amendment right to compulsory process when the court denied an opportunity to examine a witness for the defense; and 2) whether Petitioner's constitutional right to effective assistance of counsel was violated when counsel failed to object to the State's failure to prove the cleansing period had not elapsed at his multiple offender hearing.[13]   The trial court denied his application on November 15, 2005.[14]   The Louisiana Fifth Circuit and the Louisiana Supreme Court denied his subsequent writ applications on December 12, 2005,[15] and on November 22, 2006, respectively.[16]   Thereafter, Petitioner filed the instant petition for write of habeas corpus in federal district court, signed February 19, 2007.

## II.     JURISDICTION

Jurisdiction is proper under the Antiterrorism and Effective Death Penalty Act (AEDPA) if the Petitioner is "in custody" under the conviction he is attacking.[17]   Petitioner is confined at the Louisiana State Penitentiary in Angola.  Accordingly, this condition of the Court's subject matter jurisdiction over Petitioner's claim for relief is satisfied.

## III.    VENUE

Venue is proper under AEDPA in the district where the inmate is in custody or where the

---

[13] State Rec. Vol. 4

[14] *Id.*

[15] *Id.*

[16] *State ex rel. Hensley v. State*, 942 So.2d 549 (La. 2006).

[17] 28 U.S.C. § 2241(c)(3); 28 U.S.C. § 2254(a).

state court conviction and sentence were obtained.[18]  Petitioner was convicted and sentenced in

Jefferson Parish.  Venue is proper in the Eastern District of Louisiana.

## IV.    TIMELINESS

The State submits that the petition is timely,[19] and after reviewing the record this Court

agrees.  Generally speaking, the Antiterrorism and Effective Death Penalty Act of 1996

(AEDPA) requires that a petitioner bring his Section 2254 claims within one year of the date on

which his conviction became final.[20]  Pursuant to 28 U.S.C.  § 2244(d)(1)(A), Petitioner's one-

year limitation period for seeking federal habeas corpus relief commenced running on the date

the judgment "became final by the conclusion of direct review or the expiration of the time for

seeking such review."  Petitioner's direct appeal was denied by the Supreme Court of Louisiana

on June 17, 2005, and he did not appeal to the United States Supreme Court.  Petitioner's

conviction became final ninety days after the Supreme Court of Louisiana denied his application

for supervisory writs, on September 15, 2005.

On this date, the one-year statute of limitations for filing a federal habeas corpus petition

began to run.[21]  However, AEDPA's one-year statute of limitations is tolled for the period during

which a properly filed application for state post-conviction relief or other collateral review

attacking a conviction or sentence is pending in state court.[22]  A total of 34 days passed from

---

[18] 28 U.S.C.  § 2241(d).

[19] Fed. Rec. Doc. 14 at 3.

[20] 28 U.S.C.  § 2244(d).

[21] See *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003); *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999).

[22] See *Fields v. Johnson,* 159 F.3d 914 (5th Cir. 1998); 28 U.S.C. § 2244(d)(2).

September 15, 2005 until October 19, 2005, when Petitioner filed his motion for post-conviction relief. The statute of limitations was tolled while Petitioner's application for state post-conviction relief was pending in the state courts. The Louisiana Supreme Court denied writs on Petitioner's post-conviction relief on November 22, 2006. Petitioner filed the instant petition on February 19, 2007. Allowing tolling for the period during which Petitioner's state applications were pending, a total of 123 days lapsed, which is within the statute of limitations. Accordingly, the Court finds the petition for writ of habeas corpus now before the Court is timely.

## V.     EXHAUSTION

Petitioner has exhausted available state remedies as required by AEDPA. Under AEDPA, a petitioner must first exhaust his remedies in state court before seeking habeas relief from the federal courts.[23] Exhaustion requires that a petitioner fairly present the substance of his claim to the state courts.[24] The exhaustion requirement is generally satisfied only when the grounds urged in a federal habeas petition were previously presented to the state's highest court in a procedurally proper manner in accordance to state court rules.[25]

Petitioner presents five claims for review in his federal habeas petition as listed above. Each of these claims was raised in his application for writs of certiorari and review to the Louisiana Supreme Court on direct appeal and/or in his application for post-conviction relief. Accordingly, Petitioner satisfied AEDPA's exhaustion requirement. Therefore, the Court addresses Petitioner's claims on the merits.

---

[23] 28 U.S.C. § 2254(b)(1)(A).

[24] *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001).

[25] *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).

## VI.    STANDARD OF REVIEW

AEDPA comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of fact and law.[26]  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2).[27] As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[28]  In *Bell v. Cone*,[29] the United States Supreme Court noted the following:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable,

---

[26] 28 U.S.C. § 2254(d):
An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the State court proceeding.

[27] *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

[28] 28 U.S.C. § 2254(d)(1).

[29] *Bell v. Cone*, 535 U.S. 685, 694 (2002)(internal citations omitted).

and ... an unreasonable application is different from an incorrect one.[30]

As to questions of fact, a state court's factual findings are presumed to be correct and a federal court "will give deference to the state court's decision unless it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."[31]

## VII.   LAW & ANALYSIS

## 1.  Challenge for Cause

Petitioner's claim for improper denial of challenge for cause is based on an allegedly unsatisfactory rehabilitation of juror Dayan Guirovich during voir dire.  Specifically, Petitioner contends that the trial court incorrectly determined the venireperson's ability to be fair and impartial based on the preliminary questions asked by the trial judge.  Petitioner argues that Ms. Guirovich should have been excused from the jury after she stated during cross-examination that she was "not sure" whether she could be fair in this case.[32]  The Louisiana Court of Appeals found in an unanimous decision that the trial court did not err in denying the challenge for cause against Ms. Guirovich.[33]  This Court agrees.

---

[30] *Id.* at 694.

[31] *Hill,* 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

[32] State Rec. Vol. 3 at 58, lines 19-22.

[33] *State v. Hensley,* 900 So.2d 1, *10 (La.App.5 Cir. 2005)("At no time did Ms. Guirovich unequivocally state that she could not be impartial... [S]he declared her ability to be impartial.")

In his concurring opinion, Judge Daley expressed concern with the Louisiana Supreme Court's ruling in *State v. Kang*, 02-2812(La. 10/21/03), 859 So.2d 649, 654, which instructed the lower courts to review the juror's voir dire "as a whole and not focus on individual responses."  Judge Daley notes that prior to *Kang*, Ms. Guirovich's response that she was "not sure" she could be fair would require "at least some clarifying inquiry or rehabilitation as a basis for denying the challenge for cause."  *Hensley,* 900 So.2d at *14.

The Sixth Amendment requires, in part, that jurors be impartial decisionmakers, stating: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed."[34]  It is well established that "the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors."[35]  In order to ensure an impartial jury, the trial court has "a serious duty to determine the question of actual bias, and a broad discretion in its rulings on challenges therefor....  In exercising its discretion, the trial court must be zealous to protect the rights of an accused."[36]  The trial court is vested with broad discretion in ruling on challenges for cause, and its determination of a juror's impartiality can be overturned only for "manifest error."[37]  This standard defers to the trial court's benefit of seeing the facial expressions and hearing the vocal intonations of the potential jurors during the voir dire process.[38]

Petitioner contends his challenge for cause to dismiss juror Dayan Guirovich should have been granted.  During voir dire, Ms. Guirovich indicated she was married to a Jefferson Parish deputy and her brother-in-law and sister-in-law were also Jefferson Parish deputies.[39]  She

---

[34] U.S. CONST. amend. VI.

[35] *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961).

[36] *Wainwright v. Witt,* 469 U.S. 412, 429, 105 S.Ct. 844, 855, 83 L.Ed.2d 841(1985)(quoting *Dennis v. United States*, 339 U.S. 162, 168, 70 S.Ct. 519, 521, 94 L.ED. 734 (1950)).

[37] *Patton v. Yount*, 467 U.S. 1025, 1031, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984).

[38] *See e.g., Witt*, 469 U.S. at 528 (citing *Reynolds v. United State*s, 98 U.S. 145, 156-157, 25 L.Ed. 244 (1879)).  In *Reynolds*, the Court stated that "the manner of the juror while testifying is oftentimes more indicative of the real character of his opinion than his words.  That is seen below, but cannot always be spread upon the record. Care should, therefore, be taken in the reviewing court not to reverse the ruling below upon such a question of fact, except in a clear case."

[39] State Rec. Vol. 3 at 28.

further indicated that she discusses her husband's work with him.[40]  When asked by the trial

judge whether should could be fair and impartial, Ms. Guirovich answered affirmatively.[41]

However, when cross examined by the defense counsel, Ms. Guirovich responded that she was

"not sure" she could be fair.[42]  Defense counsel challenged Ms. Guirovich for cause, but the trial

judge stated that Ms. Guirovich answered his initial questions satisfactorily.  Defense counsel

requested an objection be noted.  The State, seeking to avoid a potential challenge for cause

issue, asked Ms. Guirovich for her husband's district.  Ms. Guirovich's response indicated that

---

[40] *Id*. at 58.

[41] THE COURT:  Ma'am, do you have any family in law enforcement?

MS. GUIROVICH:  My husband's a deputy for Jefferson Parish, and my brother-in-law and sister-in-law are both deputies for Jefferson Parish.

THE COURT:  All right.  Would your relationships with your husband and those other relatives in any way affect your ability to be fair and impartial?

MS. GUIROVICH:  No.

THE COURT:  Okay.  You could put aside the fact that they work for the Sheriff's Office and base your decision solely on the facts or the evidence and the testimony in this case only?

MS. GUIROVICH:          Yes.

*Id.* at 27-28.

[42] MS. FUSELIER: Guirovich.  Okay.  You said that your husband was with the JP?

MS. GUIROVICH:          Yes....

MS. FUSELIER: And how long has he been a deputy?

MS. GUIROVICH:          Five years.

MS. FUSELIER: Five years.  Do you discuss his work with him?

MS. GUIROVICH:          Yes.

MS. FUSELIER: Is that going to affect your ability to be fair to the defendant?

MS. GUIROVICH:          I hope it wouldn't be.

MS. FUSELIER: But you don't know?

MS. GUIROVICH:          Don't know.

MS. FUSELIER: You're not sure?

MS. GUIROVICH:          Not sure, no, ma'am.

*Id.* at 57-58.

her husband worked in a different district from the officers involved in the case.

In his argument, Petitioner focuses on Judge Daley's concurring opinion from the Louisiana Appeals Court decision affirming the trial court's conviction.[43]  Judge Daley stated in his concurrence that Ms. Guirovich's response of "not sure" was sufficient to validate Petitioner's challenge for cause.  However, in deference to the recent Louisiana Supreme Court decision in *State v. Kang*,[44] Judge Daley did not formally dissent from the majority's opinion.[45]

In this case, Ms. Guirovich responded unequivocally in the affirmative to her ability to be fair and impartial when questioned by the judge.  She additionally stated that she could base her decision solely on the facts or the evidence and the testimony provided at trial.  In her subsequent responses to the defense attorney, Ms. Guirovich never stated that she could not be fair and impartial.  Accordingly, Petitioner has not demonstrated error in the jury selection process.

## 2.  Insufficiency of Evidence

Petitioner alleges that the evidence adduced at trial was insufficient to support a conviction for armed robbery.  Petitioner argues that he was convicted despite a question of misidentification.  Petitioner asserts that: (1) there is reasonable probability that witness Nahn Dihn misidentified Petitioner; (2) witness Hoang Dihn may not have gotten a good look at the

---

[43] *Henlsey*, 900 So.2d at 14 (Daley, J., concurring).

[44] *Id*. (citing *State v. Kang*, 859 So.2d 649 (2005)).

[45] Rather, Judge Daley sought to bring attention to the issue presented in this case – whether, when a potential juror states that they are not sure they can be fair, rehabilitation should be required before the challenge for cause can be denied.   Judge Daley contended the trial court should have rehabilitated Ms. Guirovich after her response to the defense attorney during voir dire questioning, and that the subsequent question regarding the police district where Ms. Guirovich's husband worked was insufficient to be considered rehabilitation.

robber; (3) no physical evidence links Petitioner to the crime; and (4) no attempt was made to retrieve the items Petitioner allegedly purchased from the store, which would have corroborated his version of events.  Petitioner raised the same claim on direct appeal.  The Louisiana Fifth Circuit Court of Appeal considered Petitioner's argument  utilizing the *Jackson* standard of review*,* which requires the appellate court to determine whether the evidence, viewed favorably to the prosecution, was "sufficient for any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt."[46]  In regards to circumstantial evidence, the appellate court noted that the factfinder must be satisfied that "the overall evidence excludes every reasonable hypothesis of innocence when analyzing circumstantial evidence."[47]

A claim of insufficient evidence is reviewed by a habeas court under the *Jackson* standard.[48]  A fundamental principle of American jurisprudence is that a criminal defendant may not be convicted absent a finding of guilt beyond a reasonable doubt by the finder of fact.[49]  A jury's findings on an issue of fact will be upset only if necessary to preserve the "fundamental protection of due process of law."[50]

In reviewing a claim for insufficient evidence, this Court must determine whether, looking at the elements of the offense and viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the elements of the crime beyond a

---

[46] *Hensley*, 900 So.2d at 6 (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

[47] *Id.* (citing *State v. Marcentel*, 815 So.2d 50, 56(La. 2002)).

[48] *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  *See also Guzman v. Lensing*, 934 F.2d 80, 82 (5th Cir. 1991).

[49] *Jackson*, 443 U.S. at 316-317.

[50] *Id*. at 319.

reasonable doubt.[51]  As explained by Judge Wisdom, "The reviewing court does not substitute its conclusion on the sufficiency of the evidence for that of the fact finder; it determines whether any rational fact finder could conclude that the evidence was sufficient to meet this standard."[52]

The essential elements in question are contained in LSA-R.S. 14:64(A), which provides:

Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.

In the case at hand, Petitioner contends he was misidentified.  However, ample evidence supports the fact finder's conclusion that Petitioner was the armed robber.  He was identified by both of his victims.  One of his victims also identified the bottle of Mad Dog 20/20 sold to Petitioner, the recovered money stolen from the cash register, and the gun from the night of the robbery.   The victim testified that the bottle and money were found on Petitioner's person when he was caught and detained, and that he saw Petitioner throw the gun under a car where the victim later retrieved it.  The jury, to which credibility determinations are entrusted, rejected the defendant's hypothesis of innocence.  This Court does not have the authority to evaluate this evidence *de novo* but is constrained to give deference to the findings of the original jury and to the state courts reviewing the verdict.[53]  This Court therefore defers to the state court decision,[54] finding nothing based on an unreasonable determination of the facts in light of the evidence

---

[51] *Id.*; *Donahue v. Cain*, 231 F.3d 1000, 1004 (5th Cir. 2000).

[52] *Bujol v. Cain*, 713 F.2d 112, 114-15 (5th Cir. 1983).

[53] *See Will v. Cain*, 2007 WL 2127589, *6 (E.D.La. 2007) (Berrigan, J.).

[54] *Hensley v. State*, 900 So.2d 1, *7 (La.App. 5 Cir. 3/1/05)("Although Hensley contends that the State failed to meet its requisite burden [of misidentification], the record contains sufficient evidence to support his conviction.").

presented at trial.

### 3.  Excessive Sentence

Petitioner claims that his life sentence is unconstitutionally excessive in violation of the Eight Amendment's cruel and unusual punishment clause.[55]  Specifically, Petitioner argues that the sentence is grossly disproportionate to the crime.[56]  He further claims that the sentencing judge at the multiple offense hearing could have reduced the mandated punishment due to its excessive nature.  In support of his argument, Petitioner asserts that his life sentence "is nothing but the needless imposition of pain and suffering," and "makes no meaningful contribution to acceptable goals of punishment."[57]  Petitioner claims that *State v. Dorthey*[58] provides for a downward departure of the sentence, which he asserts is warranted, and lists mitigating factors in support of such departure.[59]

The State refutes all of Petitioner's arguments, asserting that Petitioner's initial sentence was within the range set forth by the Louisiana legislature for conviction of armed robbery,[60] and that the life sentence imposed by the Habitual Offender Law was properly implemented pursuant

---

[55] Petition at 24.

[56] *Id.*

[57] *Id.*

[58] *State v. Dorthey*, 623 So.2d 1276, 1280-81 (La. 1993)(holding that when a trial court determines the minimum sentence mandated by LSA-R.S. 15:529.1 makes no measurable contribution to acceptable goals of more than one sentence amounts to nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime, the trial judge must reduce the sentence to one that would not be constitutionally excessive).

[59] Petitioner asserts that the mitigating factors in his case is that the gun used in the robbery was a BB gun, which was discarded at the scene, no attempt was made to harm anyone, and no one was harmed.  *Id.* at 25.

[60] The statutory sentencing range for armed robbery is ten to ninety-nine years, without benefit of parole, probation, or suspension of sentence.  LSA-R.S. 14:64(B).  Petitioner was initially sentenced to sixty years.

to LSA-R.S. 15:529.1.[61]  The State points to Petitioner's three prior convictions for crimes of

violence (two simple robberies and one aggravated robbery), and notes that his fourth conviction

was also for a crime of violence.[62]

A federal habeas court will not upset a state sentence within the statutory limits unless

the sentence is so disproportionate to the offense as to be completely arbitrary and shocking.[63]

Federal courts accord broad discretion to a state trial court's sentencing decision where the

sentence falls within the statutory limits.[64]  However, even when a sentence is within statutory

limits, it may still be unconstitutional if it is grossly disproportionate to the crime or resulted

from a sentencing decision that was "wholly devoid of discretion or amounted to an arbitrary or

capricious abuse of discretion,...[or where] an error of law resulted in the improper exercise of

the sentencer's discretion and thereby deprived the petitioner of his liberty."[65]  The Supreme

Court has recognized that the precise contours of the "grossly disproportionate" standard are not

---

[61] Fed. Rec. Doc. 14 at 20-21.

[62] *Id*. at 21.

LSA-R.S. 14:2(B) defines a "crime of violence" as:
"... [A]n offense that has, as an element, the use, attempted use, or threatened use of physical force against the person or property of another, and that, by its very nature, involves a substantial risk that physical force against the person or property or another may be used in the course of committing the offense or an offense that involves the possession or use of a dangerous weapon."

[63] *Bonner v. Henderson*, 517 F.2d 135, 146 (5th Cir, 1975);  *see also Smallwood v. Johnson*, 73 F.3d 1341, 1347 (5th Cir. 1996)(emphasizing that a federal court will not review a state sentencing without a threshold showing that the sentence is "grossly disproportionate to the offense").

[64] *Haynes v. Butler*, 825 F.2d 921, 923-4 (5th Cir. 1987); *see also Turner v. Cain*, 199 F.3d 437, *3 (5th Cir. 1999)(unpublished)(finding that sentence was within Louisiana statutory limits as well as the trial court's discretion, thus the petitioner failed to state a cognizable claim for excessive sentence).

[65] *Hines v. State*, 102 F.Supp.2d 690, 698 (E.D. La. 2000) (quoting *Haynes*, 825 F.2d at 924)(internal citations and quotation omitted).

clear, but has held that the principle applies only to "exceedingly rare" and "extreme" cases.[66]
Additionally, Louisiana state law indicates that downward departures from the minimum
sentence mandated by LSA-R.S. 15:529.1 should occur only in rare situations.[67]

In this case, Petitioner's life sentence was predetermined under the Habitual Offender
Law and is therefore within the statutory limit.[68]  Life sentences under the Habitual Offender
Law, moreover, are presumed to be constitutional.[69]  A court may only depart from the
mandatory sentence if it finds clear and convincing evidence that would rebut the presumption of
constitutionality.  The burden is on the Petitioner to rebut the presumption of constitutionality by
showing that he is exceptional, which in this context means that because of unusual
circumstances this petitioner is a victim of the legislature's failure to assign sentences that are
meaningfully tailored to the culpability of the offender, the gravity of the offense, and the
circumstances of the case.[70]

Here, Petitioner has failed to show that there is anything exceptional about his situation.
He was convicted of three crimes of violence prior to the instant offense, which was also a
violent crime.  The factor that he argues should be mitigating in his case, that the gun used was a

---

[66] *Lockyear v. Andrade*, 538 U.S. 63, 73, 123 S Ct. 1166, 1173, 155 L.Ed.144 (2003).

[67] *Nicks v. Cain*, 2005 WL 1578024, *8 (E.D. La. 2005) (Berrigan, J.); *see also State v. Davis*, 792 So.2d 126, 132 (La.App. 5 Cir. 7/30/01).

[68] LSA-R.S. 15:529.1(A)(c)(ii), the Louisiana's Habitual Offender Law, provides:

If the fourth felony and two of the prior felonies are felonies defined as a crime of violence under R.S. 14:2(B), ...or of any other crime punishable by imprisonment for twelve years or more, or any combination of such crime, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.

[69] *Nicks*, 2005 WL 1578024 at *8 (citing *State v. Johnson*, 709 So.2d 672, 676 (La. 3/4/98)).

[70] *Id.*

BB gun, in no way renders even the instant offense nonviolent.[71]  Indeed, even a simple robbery is classified as a crime of violence.  Nor does he show that the mandatory life sentence is arbitrary or shocking.  Therefore, the Court finds that Petitioner has failed to meet his burden of rebutting the presumed constitutionality of the sentence, and this claim is without merit.

### 4. Right to Compulsory Process

Petitioner contends the trial court erred in failing to compel a witness favorable to Petitioner to testify.  The witness, Pierre Weatherspoon, claimes in an affadavit that he was outside Kim's Grocery at the time of the robbery and saw the perpetrator exit the store, and that the robber was not Petitioner.[72]  Petitioner sought Weatherspoon's testimony to support his argument that he had been misidentified.  Defense counsel subpoenaed Weatherspoon, and attempted to call him at trial.[73]  Weatherspoon's attorney had not been notified of the subpoena, and when contacted by the trial court during a recess, stated that his client, who was then being held in prison pending his own trial for second degree murder, should not be permitted to testify.[74]

Petitioner raised this claim in his writ application for post conviction relief in the trial court.  In its affirmation of the trial court's decision, the reviewing court found that the impact of the testimony was considered before refusing to compel the witness to testify.[75]  The court also

---

[71] *See* LSA-R.S. 14:2(B), above at note 73.

[72] State Rec. Vol. 5.

[73] State Rec. Vol. 3 at 213.

[74] *Id.* at 222-23.

[75] State Rec. Vol. 4 at 143.

noted that the Louisiana Fifth Circuit Court of Appeal had already found that the State met its burden of proof to negate any reasonable probability of misidentification.[76]

Petitioner claims that the trial court violated his Sixth Amendment right to compulsory process in its failure to compel testimony from Weatherspoon.  Petitioner asserts his Sixth Amendment right which provides "[i]n all criminal prosecutions, the accused shall enjoy the right... to have compulsory process for obtaining witnesses in his favor."[77]  The State refutes this argument in the context of the trial court's proceedings.  The State points out that the right to call a witness is not absolute.[78]  However, Petitioner correctly contends that the Fifth Amendment privilege against self-incrimination is personal to the witness and may not be claimed by anyone else, not even his counsel.[79]

In *U.S. v. Hernandez*, the Fifth Circuit stated "[i]t is well settled that a defendant's Sixth Amendment right of compulsory process to obtain witnesses in his favor must yield to a witness's Fifth Amendment privilege against self-incrimination.  The trial judge, moreover, necessarily is accorded broad discretion in determining the merits of a claimed Fifth Amendment privilege."[80] Furthermore, while the "nature of the privilege is such that in the final analysis the controlling decision is that of the witness himself," the "witness is entitled to the advice of counsel before determining whether he should invoke the privilege" and it "is in the discretion of

---

[76] *Id.*

[77] U.S. CONST. amend. VI.

[78] *Brown v. Caini,* 104 F.3d 744, 749 (5th Cir. 1997).

[79] *U.S. v. Mayes*, 512 F.2d 637, 649 (6th Cir. 1975); *In re Haggerty*, 241 So.2d 469 (La. 1970).

[80] 962 F.2d 1152, 1161 (5th Cir. 1992) (citing *Roussell v. Jeane*, 842 F.2d 1512, 1516 (5th Cir. 1988) and *United States v. Lyons*, 703 F.2d 815, 818 (5th Cir. 1983)) (internal quotation omitted).

the trial judge to permit counsel for the witness to invoke the privilege on his behalf."[81]   The

judge had not been apprised of the subpoena or Petitioner's intention to call Weatherspoon.[82]

Indeed, defense counsel indicated she was not aware that Petitioner sought to call him;[83] thus no

effort had been made to bring Weatherspoon from the jail across the street.[84]  Ultimately, the

court ruled that he would not compel [Weatherspoon] to testify without counsel present to advise

and to listen...."[85]  Thus, as the State notes in its response, the court's ruling was not that it would

not compel Weatherspoon to testify but rather that he would not compel him to testify at that

moment without his attorney present to advise him.[86]  In response, the defense could have moved

for a recess or requested additional time for Weatherspoon's attorney to appear and advise him,

but did not.[87]

　　　　Even assuming it was error not to compel Weatherspoon's testimony, the State submits

that such error would have been harmless, and the Court agrees.  The denial of a petitioner's

right to confront a witness is subject to harmless error analysis under *Brecht v. Abrahamson*.[88]

The Court must determine whether the error "had substantial and injurious effect or influence in

---

[81] *Mayes*, 512 F.2d at 649.

[82] *Id.* at 214-15.

[83] *Id.* at 215.

[84] *Id.* at 214, 216.

[85] *Id.* at 223.

[86] Rec. Doc. 14 at 28.

[87] Defense counsel herself stated that she "didn't particularly want the witness.  The defendant wants the witness," State Rec. Vol. 3 at 221, perhaps reflecting counsel's strategic concern over the quality of Weatherspoon's likely testimony or his impact on the case.

[88] 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).

determining the jury's verdict."[89]   In *Hulin v. Cain*,[90] this Court held that when a witness exercises his or her Fifth Amendment right and does not testify, the defendant must demonstrate that "there is more than a mere reasonable possibility that the trial error contributed to the verdict."  In this case, the Court can not conclude that this standard is met:  Weatherspoon's testimony, that he had seen the Petitioner exit the store and observed another man exit the store with a gun, likely would have been significantly discounted by the jury.  He was on trial for second degree murder and had a criminal history, and there was no other indication that Weatherspoon had been present at the scene of the crime.[91]  The evidence pointing to the petitioner's guilt was substantial:  As the Louisiana Fifth Circuit noted on direct review, the two victims were certain that Petitioner had committed the robbery.[92]  The second brother, Nhan Dhin, testified that he chased the man who had robbed his store, who he identified as the Petitioner, out of the store and saw him lay down in a bush, where Dihn captured Petitioner.[93] He also testified that he saw the same man, the one he chased and that he ultimately found in the bush, throw the gun under a car, and that he later recovered the gun.[94]  Finally, Dihn testified that when he captured the Petitioner, he held up the money and said, "Here's the money, don't hurt me."[95]  More than simply arguing that the Dihns were mistaken and misidentified him as the

---

[89] *Id.* (internal quotation and citation omitted).

[90] 2006 WL 1235922 (E.D.La. 2006) (quoting  *Brecht,* 507 U.S. at 637).

[91] *See* State Rec. Vol. 2 at 217.

[92] *Hensley*, 900 So.2d at 7; State Rec. Vol. 3 at 157-16,165, 171, 173, 179-80.

[93] State Rec. Vol. 3 at 180.

[94] *Id.* at 181.

[95] *Id.* at 180.

robber, it appears that Petitioner would have had to convince the jury to believe that the brothers were outright lying when they identified him.  In this context, the Court can not conclude that the absence of Weatherspoon's testimony had a substantial and injurious affect on the jury's verdict.  Accordingly, the Petitioner's claim is without merit.

## 5.  Ineffective Assistance of Counsel

Petitioner claims that his counsel rendered ineffective assistance of counsel during his multiple offender hearing.  Utilizing the *Strickland* two-pronged test for determining ineffective counsel,[96] Petitioner claims that his attorney's performance was deficient because of her failure to object to the State's reliance on his prior 1987 conviction, violating his Sixth Amendment guarantee to counsel, and that the effect of his lawyer's deficient performance was so prejudicial that he was sentenced to life without benefit of parole, probation, or suspension of sentence. Specifically, Petitioner claims that the State erred when it failed to present affirmative proof as to the discharge dates of the 1987 predicate offense, and that his counsel should have objected.[97]

The State argues that Petitioner's life sentence under the Habitual Offender Statute is valid regardless of the failure to actually establish his discharge dates during the hearing.  The ten year cleansing period begins to run with the expiration of the maximum sentence from the previous condition.[98]   Citing the Multiple Bill of Information, the State asserts that Petitioner was sentenced to 14 years at hard labor for his November 20, 1987 conviction for simple

---

[96]  *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

[97] *Id*. at 35.

[98] LSA-R.S. 15:529.1(C): "The current offense shall not be counted as, respectively, a second, third, fourth, or higher offense if more than ten years have elapsed between the date of the commission of the current offense or offenses and the *expiration of the maximum sentence or sentences* of the previous conviction or convictions...." (Italics added).

robbery.[99]  The State argues that the 10 year cleansing period would not begin to run until the

expiration of the 14 years sentence, on March 9, 2002.[100]

This claim was not raised before the Louisiana Fifth Circuit Court of Appeal on direct

review, but the court noted in its opinion the issue of insufficient evidence during the multiple

offender hearing.[101]  The court appellate court stated: "[T]he record does not reflect that the State

proved the underlying offense (April 26, 2002) was committed within ten years of defendant's

actual discharge from his predicate conviction (November 20, 1987), as required by the version

of LSA-R.S. 15:529.1(C) at the time of the offense.  The trial judge did state, however, that the

felonies were timely within the cleansing period required by law."[102]  The appellate court

subsequently declined to further examine the issue, stating it was barred from taking corrective

action because Petitioner did not complain of the error.[103]  Petitioner raised the instant ineffective

assistance of counsel claim in his writ for post conviction in the trial court.[104]  The trial judge

denied Petitioner post conviction relief, stating that the 1987 conviction properly falls within ten

years between the commission of the offense in the instant case and the expiration of the

maximum sentence in the 1987 case.[105]  The trial judge also noted that Petitioner's counsel cross-

examined the State's witness during the multiple offender hearing, and found Petitioner's claim

---

[99] Fed. Rec. Doc. 14 at 34 (citing State Rec. Vol. 1, at 55).

[100] *Id.,* Petitioner was found guilty by jury on November 20, 1987, and sentenced to 14 years at hard labor on March 9, 1988.

[101] *Hensley*, 900 So.2d 1 at *13.

[102] *Id.*

[103] *Id.*

[104] State Rec. Vol. 4 at 158-159.

[105] *Id.* at 144.

that his counsel should have objected to the use of the 1987 conviction was without merit.[106]
The state appellate court, finding no error in this ruling, denied Petitioner's writ application.[107]
The Louisiana Supreme Court denied Petitioner's appeal without comment.[108]

To prevail on an ineffective assistance of counsel claim, which involves a mixed question of law and fact,[109] Petitioner must satisfy each prong of the following two-part test established in *Strickland*. First, Petitioner must show that counsel's performance was deficient, that is, that his attorney made errors so serious that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment.[110] Petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness, with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance."[111] Becausecountless ways exist to provide effective representation, "judicial scrutiny of counsel's performance must be highly deferential."[112] Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[113] Petitioner bears the burden of proof when asserting a claim for ineffective assistance of counsel and "must demonstrate, by a

---

[106] *Id.*

[107] *Id.* at 236.

[108] *Hensley*, 942 So.2d 549 (La. 2006).

[109] *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002), *cert. denied*, 538 U.S. 969, 123 S.Ct. 1768 (2003).

[110] *Strickland*, 466 U.S. at 687.

[111] *Black v. Collins*, 962 F.2d 394, 401 (5th Cir. 1992) (quoting *Strickland*, 466 U.S. at 688).

[112] *Strickland*, 466 U.S. at 689.

[113] *Id.*

preponderance of the evidence, that his counsel was ineffective."[114]

Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable.[115] Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[116] A reasonable probability as "a probability sufficient to undermine confidence in the outcome."[117]   The focus of the prejudice inquiry is whether the result of a proceeding has been rendered unreliable, and thus the proceeding itself unfair, because of defense counsel's errors.[118] Failure to satisfy either the performance or the prejudice prong is fatal to Petitioner's claim.[119]

At Petitioner's multiple offender hearing on August 22, 2003, the State produced various documents in support of its allegation that Petitioner was a multiple offender under Louisiana's Habitual Offender Statute, LSA-R.S. 15:529.1.[120] These documents included fingerprint cards, copies of bills of information, *Boykin* waiver of rights forms, arrest registers, and police reports

---

[114] *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000).

[115] *Strickland*, 466 U.S. at 687.

[116] *Strickland*, 466 U.S. at 694.

[117] *Id.*

[118] *Id.*; *see also Kimmelman v. Morrison*, 477 U.S. 365, 374, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) ("The essence of an ineffective assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect").

[119] *Id.*

[120] State Rec. Vol. 2 at 251; Vol 1 at 19, 58-77.

from Petitioner's previous convictions.[121]  During the hearing, the State called Lieutenant

Patricia Adams, an expert witness in identifying fingerprints, to introduce the evidence from

Petitioner's prior convictions.[122]  Lieutenant Adams was cross-examined by Petitioner's counsel,

but neither inquiries nor objections were made regarding the cleansing period for the predicate

offense.[123]  The record from the multiple offender hearing reflects no discussion of the sentence

or discharge for the 1987 conviction.  Additionally, direct and cross-examinations were limited

to the expert witness identifying fingerprint cards and introducing police reports into evidence.

Louisiana state precedent firmly establishes that it is the duty for the State to prove that

ten years has not elapsed between the defendant's release from custody on the prior offense and

the current offense.[124]  Proof of the date of discharge of a prior felony is an "essential element" in

a multiple offender hearing, because the date of discharge is the basis for which the State may

calculate whether the prior felony conviction has been cleansed.[125]

Petitioner was entitled to the effective assistance of counsel, guaranteed by the federal

Sixth Amendment, at his multiple offender hearing.[126]  The state trial court, in its opinion

---

[121] Petitioner had three prior convictions: simple robbery in 1984, aggravated burglary in 1985, and simple robbery in 1987.

[122] State Rec. Vol. 2 at 252-269.

[123] *Id*. at 269-283.

[124] *State v. Thomas*, 938 So.2d 168, 176-77 (La. App. 1 Cir. 2006)(citing *State v. Smith*, 897 So.2d 710, 713 (La. App. 1 Cir. 2004) and *State v. Williams*, 833 So.2d 428, 432 (La. App. 4 Cir. 2002)).

[125] *State v. Smith*, 897 So.2d 710, 713 (La. App. 1. Cir. 2004);  *see also State v. Metoyer*, 612 So.2d 755, 758 (La. App. 5 Cir. 1992).

[126] *See Mempa v. Rhay*, 389 U.S. 128, 134 (1967) (confirming that the "appointment of counsel for an indigent is required at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected"); *U.S. v. Fields*, 483 F.3d 313, 331 (5th Cir. 2007) (recognizing that criminal defendants have a right to counsel throughout sentencing, citing *Rhay* and *Strickland*).

denying Petitioner's application for post-conviction relief stated that the hearing transcript "reveals that the defense counsel cross-examined the State's witness during the Hearing."[127]  It then rejected Petitioner's ineffective assistance of counsel claim as without merit.  The court apparently treated counsel's failure to make any inquiry into the proof of the discharge as arising out of some sort of strategic decision, which would be entitled to significant deference.  However, counsel's failure to object or even inquire into an essential element of the State's burden, where no evidence on that element had been presented, cannot constitute sound strategy.[128]  A "reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful.  Solid meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention."[129]  The performance of counsel is "insufficient when counsel omits a significant and obvious issue without a legitimate strategic reason for doing so."[130]  Although the "adequacy of an attorney's arguments must be viewed from the perspective of the existing precedents of the time, not based on the hindsight of later decisions,"[131] Louisiana law was clear at the time of Petitioner's hearing, and objectively reasonable counsel would have discovered and been aware of the well-settled requirement that the State prove the actual date of discharge to meet its

---

[127] State Rec. Vol. 4 at 145.

[128] It is unclear what cross-examination, which here did not include any inquiry into Petitioner's discharge date, of the State's finger-print expert, could possibly have achieved regarding discharge dates from state custody.  It is doubtful that this witness would have had any knowledge of such facts.

[129] *U.S. v. Williamson*, 183 F.3d 458, 463 (5th Cir. 1999) (internal citation omitted).

[130] *U.S. v. Glover*, 149 F.Supp.2d 371, 379-80 (N.D.Ill. 2001) (holding that counsel was deficient in failing to adequately argue a grouping issue under the federal sentencing guidelines where there was no indication that counsel did any research or preparation as to that issue, on remand from the Supreme Court in *Glover v. U.S.*, discussed below, which did not consider the issue of deficient performance).

[131] *Id.* at 380.

burden under the habitual offender law.   Petitioner's multiple offender hearing counsel failed to raise a significant issue, obvious under well-settled state law, with no apparent legitimate strategic reason for doing so.

Despite the lack of any evidence of Petitioner's actual discharge date from state supervision on his 1987 conviction, he was adjudicated a multiple offender.  As a result, his sentence of sixty years imprisonment without benefit of parole, probation, or suspension of sentence was vacated, and he was resentenced to life imprisonment at hard labor without benefit of parole probation, or suspension of sentence.  The U.S. Supreme Court has held that any amount of actual jail time has Sixth Amendment significance, rejecting an argument that an increase in a term of imprisonment of six to twenty-one months was not significant enough to constitute prejudice in an ineffective assistance of counsel claim.[132]  If counsel had raised the issue of the State's lack of evidence as to the essential element of his actual discharge dates, there is more than a reasonable probability he would not have been adjudicated a multiple offender, such that confidence in the fairness or reliability of the sentence is undermined.[133]  If indeed his cleansing period had elapsed, Petitioner was unquestionably prejudiced by his counsel's deficient performance.[134]

---

[132] *Glover v. U.S.*, 531 U.S. 198, 202-04 (2001).

[133] *See Williamson*, 183 F.3d at 463.

[134] The Court notes that the question of Petitioner's discharge date is a straightforward factual one, and if evidence of the date were anywhere in the record and confirmed the cleansing period had not elapsed, it would likely find no prejudice in this situation.  If the date was reflected, and it demonstrated that the ten-year cleansing period had not elapsed at the time of the underlying offense, then had counsel objected, the State simply would have offered that proof.  However, this Court can not just assume the existence of evidence of what is an essential element of Petitioner's multiple offender status when it is not in the record and where the possibility exists that the ten-year cleansing period had elapsed.  In this circumstance, the Court finds that the most just and efficient use of judicial resources is to remand to the state trial court for reinstatement of petitioner's original sentence or for a new multiple offender adjudication.

**CONCLUSION**

Having considered the petition and response, the record, and the applicable law, the Court determines that petitioner has not established that he is not entitled to the relief requested except with regard to his claim ineffective assistance of counsel at his multiple offender hearing. Accordingly,

IT IS ORDERED that the petition of DONALD HENSLEY be hereby **DISMISSED WITH PREJUDICE** as to all claims but his ineffective assistance of counsel claim, and **GRANTED** with respect to that claim.

IT IS FURTHER ORDERED that Petitioner's sentence be vacated and his original sentence on his underlying conviction be reinstated, and that the case be **REMANDED** to the trial court for the state to hold a new multiple offender hearing if it so chooses.  The state shall notify the Court and the defense of its intention within 30 days of the entry of this judgment.

New Orleans, Louisiana, this 7th day of August, 2008.


HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE